**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| JUAN PABLO DIAZ MONTESINO,<br><br>              Petitioner,<br><br>  v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>              Respondents. | Case No. EDCV 26-2211-AS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On April 28, 2026, Juan Pablo Diaz Montesino ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that he has been detained since December 24, 2025, without a prior hearing or any opportunity for release on bond, in violation of his Fifth Amendment due process rights. (Dkt. No. 1).

On May 6, 2026, Respondents filed an Answer to the Petition contending that Petitioner was lawfully arrested by ICE following his recent arrest and conviction on state criminal charges in Florida and that he remains properly subject to ICE detention during the pendency of his removal proceedings. (Dkt. No. 1). Respondents assert that Petitioner is not entitled to any bond hearing until his detention reaches six months. (Id. at 3).

For the reasons stated below, the Petition is GRANTED; Respondents are ORDERED to release Petitioner immediately from immigration detention under the same conditions to which he was subject prior to his current detention; and Respondents are further ENJOINED and RESTRAINED from re-detaining Petitioner without providing him with notice and a pre-detention hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[1]

## BACKGROUND

Petitioner is a Cuban citizen who was admitted into the United States at Miami International Airport on November 10, 2023, and was granted release through Cuban Humanitarian Parole until June 12, 2025. (Petition ¶ 2, Ex. A). He lives in Lehigh Acres, Florida. (Id. ¶ 39). On or about December 2024, Petitioner filed an I-485 application for Adjustment of Status with United States Citizenship

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3, 4, 8).

and Immigration Services ("USCIS"), due to his eligibility under Section 1 of the Cuban Refugee Adjustment Act of 1966, Pub. L. No. 89-732, 80 Stat. 1161 (as amended), and the application remains pending. (Petition ¶¶ 3-4, 40, Ex. B).

On November 29, 2025, Petitioner was arrested and charged with armed trespass with a firearm in violation of Florida Statutes section 810.09(2)(b). (Petition ¶¶ 5, 41). Although the arrest report originally referenced armed trespass by four individuals including Petitioner, Petitioner did not plead to that offense, though two of the other charged individuals did plead guilty to the felony offense. (Id. ¶ 42). On December 22, 2025, Petitioner instead pled guilty to simple trespass under section 810.08, a misdemeanor. (Id. ¶¶ 5, 43, Ex. C at 1-2). The plea form and judgment contain no element requiring intent to commit a crime, and they establish no malicious intent. (Id. ¶ 43, Ex. C at 1-2).

Upon Petitioner's release from local police custody on December 24, 2025, he was arrested by ICE and was detained initially at Florida Soft Side Detention Center. (Id. ¶ 7). On January 6, 2026, he requested bond. (Id. ¶ 9). However, he was transferred to California the next day, and the immigration court took no action on his bond request. (Id. ¶¶ 7, 9, 19, Ex. E). Neither Petitioner nor counsel received notice prior to the transfer. (Id. ¶ 9).

On or about February 10, 2026, the United States Department of Homeland Security ("DHS") filed a Notice to Appear charging Petitioner with removability pursuant to section

3

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Petition ¶ 6, Ex. D).

## DISCUSSION

Petitioner claims his detention without a pre-deprivation hearing or any opportunity for release on bond violates due process. (See Petition at 11-14). Respondents assert that the government "is authorized to revoke the parole it has previously granted under 8 U.S.C. § 1182(d)(5)(A)"[2] and that Petitioner's "subsequent arrest, charges and conviction for violation of state law represent a material change in circumstance that provides a valid basis for his detention." (Answer at 2). However, Respondents fail to substantively address Petitioner's due process claims,

---

[2] "Parole pursuant to § 1182(d)(5)(A) is a distinct procedure from conditional release pursuant to § 1226(a)." Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (citing Espinoza v. Kaiser, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025)). As one district court explained:

> In one procedure, an arriving asylum seeker may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. Id. § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

Noori v. LaRose, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025).

which entitle Petitioner to release, among other relief, for the reasons explained below.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. That liberty interest persists even for those who have been previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). In such circumstances, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that his liberty "will be revoked only if he fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

5

Thus, "[m]any district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to [8 U.S.C.] § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in Mathews v. Eldridge, 424 U.S. 319, 335 (1976)." Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases); see also, e.g., Colmenarez v. Hernandez, 2026 WL 850535, at *4 (W.D. Wash. Mar. 27, 2026) ("Even assuming arguendo Respondents acted within their statutory authority to detain Petitioner upon expiration of her [humanitarian] parole, statutory authority to detain does not obviate Respondents' obligation to comply with due process.").

Petitioner, having been previously released on humanitarian parole pursuant to § 1182(d)(5)(A), therefore has a protected liberty interest in remaining out of custody. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine what process he is due, the Court considers the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

First, the private interest that will be affected by the official action; second, the risk of an erroneous

6

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Petitioner has been living in the United States since he was admitted in November 2023 and has a significant private interest in remaining out of custody. See, e.g., Pinchi, 792 F. Supp. 3d at 1033 (petitioner had substantial private interest "in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"); Ortega, 415 F. Supp. 3d at 970 (petitioner had substantial private interest in remaining on bond, as he was "living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community"); see also Morrissey, 408 U.S. at 482 (a parolee's liberty is "valuable" since it "enables him to do a wide range of things open to persons who have never been convicted of any crime," such as being employed, spending time with family and friends, and "form[ing] the other enduring attachments of normal life").

7

As to the second factor, the risk of erroneous deprivation of liberty is high if Petitioner is deprived of any custody redetermination hearing or is provided a hearing only <u>after</u> he has been detained. Particularly as Petitioner was previously released upon being found not to pose a flight risk or danger to the community, an arrest without a prompt hearing or other procedural safeguard poses a significant risk of error, with substantial harm. <u>See also</u> <u>Rivera Larios v. Albarran</u>, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing <u>Garcia v. Andrews</u>, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); <u>Arzate v. Andrews</u>, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))); <u>Padilla v. U.S. Immigr. & Customs Enf't</u>, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing <u>Zadvydas</u>, 533 U.S. at 690-91)).

This is true notwithstanding the fact that Petitioner was detained directly following his release from state police custody after pleading guilty to simple trespassing, a misdemeanor. Even in such circumstances, "[t]he government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing." <u>Duong v. Kaiser</u>, 800 F. Supp. 3d 1030, 1040 (N.D.

Cal. 2025); see also Kandola v. Warden, Cal. City Det. Facility, 2026 WL 1243464, at *2 (E.D. Cal. May 6, 2026) ("Petitioner's 2025 conviction and re-detention immediately upon release from jail does not diminish [his] liberty interest."); Ortiz v. Warden, Cal. City Corr. Ctr., 2026 WL 1104037, at *1 (E.D. Cal. Apr. 22, 2026) ("While petitioner's misdemeanor conviction may be relevant to a neutral decisionmaker's determination at a bond hearing, it does not eliminate petitioner's due process right to such determination."); Anzor I. v. ICE Field Off. Dir., 2026 WL 787978, at *3 (E.D. Cal. Mar. 20, 2026) ("That Petitioner's detention by ICE occurred immediately upon his release from criminal detention after being sentenced to time served amplifies the significance of his liberty interest."); Navjot S. v. Warden of Golden State Annex Det. Facility, 2026 WL 370140, at *3 (E.D. Cal. Feb. 10, 2026) ("[T]he fact that Petitioner has a prior arrest only highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified."); Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025))). Respondents have offered no basis to show that Petitioner's misdemeanor guilty plea or the circumstances of that state criminal matter justified re-detaining Petitioner for more than five months without any hearing to assess whether detention

9

was needed or even justified. At the very least, Petitioner was entitled to an opportunity to challenge the basis for detention.

Furthermore, "there is no countervailing government interest – the third and final Mathews factor – that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Pinchi, 792 F. Supp. 3d at 1036. Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040. Although "[t]he government may have 'a strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to 'protect[] the public from dangerous criminal aliens,' or to prevent flight and thereby 'increase the chance that . . . the aliens will be successfully removed,'" Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1013 (N.D. Cal. 2025) (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)), Respondents have not argued that any delay attributable to a pre-deprivation hearing would have risked flight or harm to others. As such, there is no significant government interest in forgoing a pre-detention hearing.

On balance, the Mathews factors show that Petitioner was entitled to notice and a hearing prior to being re-detained. See also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty." (emphasis in original)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original)); Pinchi, 792 F. Supp. 3d at 1036 (Mathews test weighed in favor of requiring pre-detention bond hearing for noncitizen previously released on bond during pendency of removal proceedings); Pablo Sequen, 800 F. Supp. 3d at 1014 (same). Having been deprived of that right, Petitioner is entitled to release from detention. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to Petitioner, who would continue to be held in detention without due process until the bond hearing takes place.").

**ORDER**

Accordingly, the Court GRANTS the Petition; ORDERS Respondents to release Petitioner immediately from immigration detention under the same conditions to which he was subject prior to his current detention; and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner without providing him with notice and a pre-detention hearing before a neutral decisionmaker at which the government bears

11

the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.


        LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: May 13, 2026


                                    _____/s/_____
                                            ALKA SAGAR
                                    UNITED STATES MAGISTRATE JUDGE